**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| BTG Patent Holdings, LLC and Bags to Go Enterprises-Nevada, LLC, <br><br> Plaintiffs <br> v. <br><br> Charity Amadi dba Bagz N Go and Deandre Turner, <br><br> Defendants | Case No.: 2:24-cv-02157-JAD-BNW <br><br> **Order Granting Motion for Permanent Injunction, Granting in Part Motion for Default Judgment, and Denying Request for Attorneys' Fees** <br><br> [ECF Nos. 43, 44] |

Plaintiffs BTG Patent Holdings, LLC, and BAGS TO GO Enterprises-Nevada, LLC sue Charity Amadi dba BAGZ N GO and Deandre Turner for trademark infringement and unfair competition, alleging that "BAGZ N GO" infringes on their "BAGS TO GO" mark. Amadi and Turner appeared in this action after their deadline to file a responsive pleading to the complaint had passed. I denied their one-page motion to dismiss and gave them an extension to file a "proper answer" to the complaint, but they failed to do so. Clerk's default was entered against both defendants, and the plaintiffs now move for default judgment, $465,000 in damages, a permanent injunction, and attorneys' fees. I find that default judgment and a permanent injunction are merited, but because the plaintiffs have not sufficiently proven damages or their entitlement to attorneys' fees, I deny those requests for relief. I also tax costs in the amount of $752.50, direct the Clerk of Court to disburse the plaintiffs' cash deposit, and close this case.

**Findings of Fact**

1. Plaintiffs advertise, market, and provide luggage-storage and transportation services throughout the United States, and specifically in Nevada and Florida (the "BTG Services"), under their BAGS TO GO trade name and trademarks (the "BAGS TO GO Marks").

2. Plaintiffs have used in commerce the BAGS TO GO Marks on or in connection with the BTG Services since at least as early as 1998, and thus have developed strong, enforceable rights in the BAGS TO GO Marks.

3. Plaintiffs have spent substantial amounts of money to advertise and promote the BAGS TO GO Marks in print, broadcast media, point-of-sale materials, social media, and on the Internet through their websites accessible throughout the United States and around the world located at <bagstogo.com> and <bagstogo.net>, among others.

4. BTG Holdings owns several United States trademark registrations for a variety of trademarks used in connection with its goods and services, including:

- U.S. Reg. No. 2904424 for BAGS TO GO INC. (stylized) in Class 39 for "[l]uggage transportation services for others, namely, pick up and delivery of luggage for the airline industry and cruise ship operators," based on an application filed on September 24, 2003;

- U.S. Reg. No. 2928928 for BAGS TO GO in Class 39 for "luggage transportation services for others, namely, pick up and delivery of luggage for airline industry and cruise ship operators," based on an application filed on February 25, 2004;

- U.S. Reg. No. 3638458 for BAGS TO GO ENTERPRISES (stylized) in Class 39 for "luggage transportation services for others, namely, pick up and delivery of luggage for airline industry and cruise ship operators," based on an application filed on October 20, 2008; and

- U.S. Reg. No. 5413147 for BAGS TO GO in Class 18 for "[a]ll-purpose reusable carrying bags; [b]aggage tags; [c]arry-all bags; [c]arry-on bags; [f]light bags; [l]uggage; [l]uggage tags; [r]eusable shopping bags; [r]oll bags; [s]hopping bags

        with wheels attached; [t]ravel baggage; [t]ravel bags; [w]heeled shopping bags," based on an application filed on September 9, 2014.

5.     BTG Holdings also owns Nevada state trademark registrations for the following marks:

- Reg. No. 202400050416-26 for BAGS TO GO in Class 105 for "[l]uggage storage and transportation services" issued November 15, 2024; and

- Reg. No. 202400050418-17 for BAGS TO GO ENTERPRISES in Class 105 for "[l]uggage storage and transportation services," issued November 15, 2024.

6.     Defendants compete with plaintiffs in the luggage-storage and transportation-services market. Defendants advertise, offer for sale, and sell luggage-storage and transportation services throughout the United States, including in Nevada, (the "Infringing Services") using the term "BAGZ N GO" (the "Infringing Mark"). More specifically, defendants advertise, offer for sale, and sell luggage storage and transportation services through an interactive e-commerce website located at <bagzngo.com>, including the sale of "BAGZ N GO" services. In other words, defendants offer and sell the same services as plaintiffs.

7.     Defendants' use of a confusingly similar mark, in conjunction with promoting the same services as plaintiffs, has already caused confusion, and will continue to cause harm to plaintiffs' goodwill and reputation, loss of control over the BAGS TO GO Marks, loss of prospective customers to BTG, and impairment to the distinctiveness of the BAGS TO GO Marks.

1  8. As a result of defendants adopting a nearly identical name for an identical business model, plaintiffs have received numerous misdirected phone calls from consumers seeking information about defendants.

9. On or around August 27, 2024, plaintiffs sent defendants a cease-and-desist letter informing defendants that their unauthorized use of the Infringing Mark on the Infringing Services infringes upon BTG's BAGS TO GO Marks, and requesting defendants to cease and desist from using the Infringing Mark or any confusingly similar mark in connection with luggage storage and transportation services.

10. On or around September 3, 2024, defendants responded to the letter and indicated that they would not stop using the Infringing Mark unless ordered to do so by a court, thereby forcing plaintiffs to file this action.

11. Plaintiffs filed their Complaint on November 19, 2024, and moved for entry of a temporary restraining order as well as a preliminary injunction on December 25, 2024.[1]

12. The Court entered its Order Granting Temporary Restraining Order on January 3, 2025, and entered its Order Converting Temporary Restraining Order into Preliminary Injunction on January 14, 2025.[2]

13. Despite the Court granting defendants multiple opportunities to file an answer to plaintiffs' complaint throughout this action, defendants did not file an answer and defaults were entered against them.

---

[1] ECF Nos. 1, 7–8.
[2] ECF Nos. 10, 16.

**Conclusions of Law**

**1.      Entry of default judgment against both defendants is appropriate.**

"The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true."[3] Federal Rule of Civil Procedure 55(b)(2) permits a court to grant default judgment against a defendant who has failed to plead or defend an action. To determine whether a default judgment is appropriate, courts may consider the following factors from *Eitel v. McCool*:

> (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claims; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.[4]

The first *Eitel* factor weighs in favor of entering default judgment because plaintiffs would lack recourse for ongoing harm from the sale and distribution of the Infringing Services in Nevada absent entry of default judgment. The second and third *Eitel* factors also weigh in favor of entering default judgment because plaintiffs have sufficiently alleged viable claims and their claims have merit.[5] The fifth *Eitel* factor weighs in favor of entering default judgment because when a defendant makes no effort to properly respond to a complaint, the likelihood of disputed facts is low. The sixth *Eitel* factor weighs in favor of entering default judgment because defendants indisputably had notice of the action, yet voluntarily decided not to file an answer.

---

[3] *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977).

[4] *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986).

[5] *See* ECF No. 10 (assessing the plaintiffs' trademark claims under preliminary injunction standard and concluding that those claims were likely to succeed on the merits).

The fourth *Eitel* factor doesn't weigh strongly in favor or against default judgment. Plaintiffs seek $495,000 in treble damages, $75,664.50 in attorneys' fees, $2,157.64 in costs, and post-judgment interest.[6] This is a significant sum when compared to the defendants' conduct and, as explained infra, plaintiffs have not sufficiently proven these damages. But plaintiffs also seek a permanent injunction that, as also explained infra, is warranted by the assumed-true facts of this case. So I do not consider the "sum of money at stake" factor to be dispositive of the default-judgment inquiry. And while the preference for a disposition on the merits weighs minimally against entry of a default judgment, defendants' failure to file an answer renders a decision on the merits "impractical, if not impossible."[7] Thus, the seventh *Eitel* factor weighs in favor of entering default judgment. Taken together, the *Eitel* factors weigh heavily in favor of granting a default judgment against defendants on all claims.

**2.      Plaintiffs have not sufficiently proven their damages.**

Plaintiffs seek "lost profits in the amount of $165,000 from [d]efendants' sale" of infringing services.[8] As support for that number, it relies on the declaration of its CEO and President Keith Wiater, who estimates, "[b]ased on a review of [p]laintiffs' revenue and customer count from the relevant periods," that the defendants' "infringing activities have caused [p]laintiffs to lose the business of handling at least 25 bags per day since October 2023."[9] Wiater assumes a rate of $10 per bag, giving him the $165,000 number. And because plaintiffs contend that the defendants' conduct was willful, they also argue that they should be awarded treble damages under 15 U.S.C. § 1117(a).

---

[6] ECF No. 43 at 16.

[7] *PepsiCo Inc. v. Cal. Security Cans,* 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2022).

[8] ECF No. 43 at 20.

[9] ECF No. 43-4 at 9, ¶ 53.

I find Wiater's calculation of damages to be entirely speculative. He fails to demonstrate how he got to his number and doesn't support his estimation with any evidence.[10] So I do not award any damages on the basis of Wiater's unsupported declaration. And because I decline to award damages, I do not consider whether the defendants' conduct could be construed as willful in a manner that may warrant trebling those damages because $3 \times 0 = 0$.

**3.  Plaintiffs are not entitled to attorneys' fees and can recoup only a fraction of their costs.**

Plaintiffs seek attorneys' fees as a prevailing party under NRS 600.430 and under the Lanham Act. NRS 600.430(1) states that "[a]ny owner of a mark registered in this State may proceed by suit to enjoin the manufacture, use, display[,] or sale of counterfeits or imitations of it." "In an action brought [under] this section, the court may award costs and reasonable attorney's fees to the prevailing party."[11] BTG Holdings registered its trademark in this state at around the time it filed its complaint,[12] but plaintiffs advanced a state-law claim for trademark infringement only under the common law, not under NRS 600.430 or its related provisions.[13] Because plaintiffs didn't advance a claim under Nevada's statutory trademark-infringement provisions, NRS 600.430 doesn't apply here.

Nor do I find that the Lanham Act entitles plaintiffs to an attorneys' fee award. 15 U.S.C. § 1117(a) provides that "[t]he court in exceptional cases may award reasonable attorney

---

[10] *See NewGen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 617 (9th Cir. 2016) (upholding damages award based on a declaration accompanied by a "detailed account of how [the declarant] calculated each figure").

[11] Nev. Rev. Stat. § 600.430(3).

[12] *See* ECF No. 1-3 (certificate of registration of state trademarks on November 15, 2024, reflecting "first use in Nevada" as December 31, 2014).

[13] *See* ECF No. 1 at 16–17, ¶¶ 98–116; ECF No. 22 at 17–19, ¶¶ 99–117 (first-amended complaint).

7

fees to the prevailing party."[14]  "An exceptional case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated."[15]  To determine whether a case is exceptional, courts may consider a "'nonexclusive' list of 'factors,' including 'frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence.'"[16]  A court's decision to award of fees, even in exceptional cases, is discretionary.[17]

      Plaintiffs contend that this case is exceptional because the defendants "forced [it] to commence this action when they intentionally refused to comply with the cease-and-desist letter sent to them back in August 2024, and then failed to respond to the amended complaint."[18]  It further argues that the defendants made plaintiffs "spend additional time addressing multiple improper procedural hurdles erected by defendants in bad faith and for which there was no justification."[19]  But the defendants' actions are not clearly attributable to bad faith or willful infringement—from the court's view of the docket, those actions are more likely attributable to the defendants' glaring lack of legal sophistication.  So on this record, I decline to conclude that

---

[14] 15 U.S.C. § 1117(a).

[15] *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 553 (2014).

[16] *Id.* at 554 n.6 (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994)).

[17] *Fifty-Six Hope Road Music, Ltd. v. A.V.E.L.A., Inc.*, 778 F.3d 1059, 1079 (9th Cir. 2015) ("The fact that 'in exceptional cases' precedes 'may' means that the case must be exception for attorneys fees to be award, but in an exceptional case, the district court may (or may not) award fees.").

[18] ECF No. 43 at 22 (cleaned up).

[19] *Id* (cleaned up).

8

this is one of those exceptional cases warranting an attorneys' fees award and I do not award the plaintiffs attorneys' fees under federal or state law.

Plaintiffs also seek $2,157.64 in costs incurred to prosecute this action.[20] This district's local rules require a party who claims costs to "file and serve a bill of costs" that must be "supported by an affidavit and distinctly set forth each item so that its nature can be readily understood."[21] "An itemization and, where available, documentation of requested costs in all categories must be attached to the bill of costs."[22]

Plaintiffs support their costs request with a counsel declaration stating that, "[t]hrough the end of August, plaintiffs have incurred $2,157.64 in costs in connection with the instant action."[23] But the invoices they submit only show $1,968.29 in costs.[24] $1,000 of those "costs" are the bond submitted to this court to secure its preliminary injunction[25]—that amount will be returned to plaintiffs' counsel when this case is closed. Of the remaining $968.29, $215.75 was apparently charged to deliver that bond check to the court.[26] Plaintiffs do not identify any specific local rule that allows recovery of those fees, so I disallow them. But the remaining

---

[20] ECF No. 43 at 23.

[21] L.R. 54-1(a), (b). The party claiming costs is also required to "file and serve a bill of costs and disbursements *on the form provided by the clerk* . . . ." L.R. 54-1(a) (emphasis added). BTG failed to do so, but I overlook this technical defect as a one-time courtesy.

[22] L.R. 54-1(b).

[23] ECF No. 43-2 at 3, ¶ 9.

[24] ECF No. 42-3 (counsel invoices).

[25] *Id.* at 13.

[26] *Id.*

$752.50 are filing and service fees that are permitted by the local rules and federal law.[27] So I tax those costs against the defendants.

**4.     A permanent injunction is warranted.**

"15 U.S.C. § 1116(a) vests the district court with the 'power to grant injunctions according to principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right' of the trademark owner."[28] A plaintiff seeking a permanent injunction must show (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and the defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.[29] "[A]ctual irreparable harm must be demonstrated to obtain a permanent injunction in a trademark infringement action."[30] Irreparable harm may be shown through evidence of the loss of prospective customers, goodwill, or reputation.[31]

Here, a permanent injunction is appropriate because plaintiffs have pled sufficient facts to demonstrate an actual loss of prospective customers, goodwill, and reputation. Indeed, plaintiffs have established that customers have been actually confused by defendants' use of the BAGS N GO mark and that defendants have benefitted from plaintiffs' extensive advertising and consumer goodwill.[32]

---

[27] *See* L.R. 54-2 (process server's fees are ordinarily taxable); 28 U.S.C. § 1920(1) (permitting a federal district court to tax as costs "fees of the clerk and marshal").

[28] *Reno Air Racing Ass'n., Inc. v. McCord*, 452 F.3d 1126, 1137–38 (9th Cir. 2006).

[29] *La Quinta Worldwide LLC v. Q.R.T.M., S.A. de C.V.*, 762 F.3d 867, 879 (9th Cir. 2014).

[30] *Herb Reed Enter., LLC v. Florida Entm't Mgmt.*, 736 F.3d 1239, 1249 (9th Cir. 2013).

[31] *Stuhlbarg Intern. Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 841 (9th Cir. 2001).

[32] Just how much they've benefitted has not been proven, however.

In trademark and unfair competition cases, a permanent injunction is typically the remedy of choice because "there is no adequate remedy at law for the injury caused by a defendant's continuing infringement."[33]  Here, defendants have refused to file an answer and continue to advertise the infringing trademarks despite adequate notice.  There is no indication that defendants will cease their infringing activity absent injunctive relief.  Thus, monetary relief alone is an inadequate remedy and an injunction is warranted.  The balance of hardships also weighs in favor of entering injunctive relief.  Defendants would endure no hardship besides being compelled to cease their unlawful conduct.  In contrast, without an injunction, plaintiffs will continue to be harmed because defendants are likely to continue to infringe on plaintiffs' marks.

The public interest also would be served by a permanent injunction because defendants are using very similar marks with the intention of confusing customers and the primary purpose of the Lanham Act is to "[p]rotect consumers against deceptive designations of the origins of goods."[34]  Furthermore, "[e]vidence that [the] use of two marks has already led to confusion is persuasive proof that future confusion is likely."[35]  Because the services provided by plaintiffs and defendants are relatively inexpensive, it is unlikely that consumers would exercise a high degree of care when selecting a business for their luggage-storage needs.

## Conclusion

IT IS THEREFORE ORDERED that plaintiffs BTG Patent Holdings, LLC and Bags To Go Enterprises-Nevada, LLC's motion for default judgment **[ECF No. 43] is GRANTED in**

---

[33] *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1180 (9th Cir. 1988).

[34] *Int'l Order of Job's Daughters v. Lindeburg & Co.*, 633 F.2d 912, 918 (9th Cir. 1980).

[35] *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 352 (9th Cir. 1979) (citation omitted).

**Part**. Default judgment is warranted, but the plaintiffs have not shown that they are entitled to damages or attorneys' fees. They have shown entitlement to an award of $752.50 in costs.

IT IS FURTHER ORDERED that plaintiffs BTG Patent Holdings, LLC and Bags To Go Enterprises-Nevada, LLC's motion for a permanent injunction **[ECF No. 44] is GRANTED.**

IT IS FURTHER ORDERED that defendants and BAGZ N GO's employees, officers, directors, agents, servants, employees, attorneys, successors, and assigns, and all other persons acting in active concert or participation with them shall be and hereby are permanently enjoined and refrained from, and shall immediately and permanently cease, infringing upon the BAGS TO GO Marks.

IT IS FURTHER ORDERED that defendants and BAGZ N GO's employees, officers, directors, agents, servants, employees, attorneys, successors, and assigns, and all other persons acting in active concert or participation with them shall be and hereby are:

(1) Permanently enjoined and refrained from, and must immediately and permanently cease, using in commerce the "BAGZ N GO" name and BAGZ N GO trademark, in any marketing material (including online, print, television, multimedia), in-store display, social-media platform, or advertisement (including online, print, television, multimedia) incorporating the "BAGZ N GO" name and BAGZ N GO trademark, or any other confusingly similar trademark to the BAGS TO GO Marks;

(2) Permanently enjoined and refrained from, and must immediately and permanently cease, engaging in any other conduct that will cause, or is likely to cause, confusion, mistake, deception, or misunderstanding as to the affiliation, connection, association, origin, sponsorship, or approval of BAGZ N GO's businesses, services, or products with plaintiffs' services sold under the BAGS TO GO Marks;

(3)  Permanently enjoined and refrained from, and must immediately and permanently cease, engaging in conduct that otherwise infringes upon the BAGS TO GO Marks; and

(4)  Permanently enjoined and refrained from, and must immediately and permanently cease, falsely or deceptively advertising, or unfairly competing with plaintiffs in any manner whatsoever.

The Court reserves jurisdiction to issue further orders in this case.

IT IS FURTHER ORDERED that **the Clerk of Court is directed to disburse and mail the full cash deposit amount and any interest payable to:**

Dickinson Wright PLLC
3883 Howard Hughes Parkway, Suite 800
Las Vegas, Nevada 89169

IT IS FURTHER ORDERED that **the Clerk of Court is directed to ENTER FINAL JUDGMENT against defendants Charity Amadi dba Bagz N Go and Deandre Turner, jointly and severally, in the amount of $752.50 in costs and CLOSE THIS CASE.**

_____
U.S. District Judge Jennifer A. Dorsey
November 13, 2025